UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

GERARD CORSINI,

                    Plaintiff,

-against-

DANIEL BRODSKY, THOMAS BRODSKY,
THE BRODSKY ORGANIZATION, LLC, 433
WEST ASSOCIATES, LLC, URBAN ASSOCIATES,
LLC, MARGARET BERGIN O'CONNOR, LOUIS
ZADRIMA, JOSEPH PITRE, THE CITY OF NEW
YORK, MAYOR MICHAEL R. BLOOMBERG,
FIRST DEPUTY MAYOR PATRICIA E. HARRIS,
POLICE COMMISSIONER RAYMOND W. KELLY,
COMMISSIONER KATHERINE L. OLIVER,
COMMISSIONER ROBERT LIMANDRI, DEPUTY
COMMISSIONER JOHN BATTISTA, DEPUTY
INSPECTOR ELISA A. COKKINOS, DETECTIVE
ERIC PATINO, DISTRICT ATTORNEY CYRUS R.
VANCE, JR., ASSISTANT DISTRICT ATTORNEY
LISA DELPIZZO, ASSISTANT DISTRICT ATTORNEY
DANIEL GARNAAS-HOLMES, ELIZABETH MORGAN
AKA ELIZABETH MORGAN CARY, JONATHAN CARY,
DANIEL J. MCKAY, AARON SHMULEWITZ, BELKIN
BURDEN WENIG & GOLDMAN, LLP, AND JOHN DOES
1-25 AND JANE DOES 1-25

                    Defendants.

———————————————————————X

Civil Action No.

**13 CV 2587**

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY OF
ALL CLAIMS AND
ISSUES SO TRIABLE

    Plaintiff, *pro se*, Gerard Corsini, as and for his complaint in this action, alleges on information and belief as follows:

### Parties, Jurisdiction, Venue and Summary of Claims

    1. Plaintiff resides and, at all times material hereto, has resided at 433 W. 21st Street,

in the City and County of New York (the "City") in which all of the conduct alleged herein took place and is suing pursuant to

(a) 42 U.S.C. §1983 and 1985 for damages against defendants, and each of them, for having committed and for having conspired to commit acts under color of state law with the intent and for the purpose of depriving plaintiff of established rights secured under the First, Fourth and Fourteenth Amendments of the Constitution of the United States, including by malicious, false arrests without any, much less probable cause, on April 18, 2012, and on July, 25, 2012 (resulting in plaintiff's hospitalization) after the illegal storming of plaintiff's apartment on July 18, 2012, for approximately three hours with repeated loud banging on plaintiff's door and repeated threats to break it down and the unbearable leaning on plaintiff's buzzer, in an unconstitutional attempt, without a warrant, to effect the false arrest made on July 25, 2012, in front of plaintiff's building with the aid of defendant Daniel Brodsky and his companies after having aided the unsuccessful storming of plaintiff's apartment, out of malice, which acts constituted nothing short of "domestic renditions" pursuant to an unconstitutional custom, practice and policy of defendants Bloomberg (the chief and final policy-maker), Harris, Kelly (the chief enforcer with the aid of defendants Patino, Vance, DelPizzo and Garnaas-Holmes), LiMandri, Oliver, Battista and of the City which has the full force of law, to retaliate for, and to deter and punish the exercise of plaintiff's established First Amendment rights to freely express his views about, and to document and depict through photography and videography, disruptive public commercial activities of public interest on plaintiff's historic, residentially zoned block of twenty-one years that have involved violations of City zoning and public property laws and regulations and, by means thereof to petition the

City, its agencies and officials, including defendants Bloomberg, Harris, Kelly, LiMandri, Oliver, Battista, Cokkinos and other officials and employees in the Bloomberg Administration (John Does 2-10 and Jane Does 1-10) with whom defendants Morgan and Cary and their friends and business associates (John Does 11-16 and Jane Does 11-16) have corrupt influence, to enforce (and to refrain from permitting or from aiding and abetting the violation of) those laws and regulations (all of which City officials and employees, together with defendant Patino and defendant John Doe 1, the detective who, with defendant Patino, falsely arrested plaintiff on July 25, 2012, and defendants John Does 17-25 and Jane Does 17-25, City detectives and fire department, EMS and other personnel who stormed plaintiff's apartment on July 18, 2012, with defendant Patino with the knowledge, involvement, approval and/or ratification of, among others, defendants Bloomberg, Harris and Kelly, are hereinafter collectively referred to as the "City defendants"), which rights plaintiff exercised, among other times, on May 14, 2011, by posting a video-petition online, www.bit.ly/441video, which is an open petition, otherwise furnished many of the City defendants on or about that date, exercising plaintiff's First Amendment rights to speak, to communicate through photography and videography and to petition his government, which rights, and the exercise thereof, defendants have willfully and maliciously violated and punished by means of the false arrests of plaintiff on April 18, 2012, by defendant Patino, and on July 25, 2012, by defendant Patino and John Doe 1, acting as agent(s) for and at the direction and with the advice, instructions, approval, knowledge, urgings and/or ratification and adoption of defendants Kelly, Bloomberg, Harris, Vance, DelPizzo and Garnaas-Holmes, as part of a custom, practice and policy of the City and of defendant Bloomberg (who had final

policy-making authority) and his Administration, including defendants Harris, Oliver, Battista, Kelly (the chief enforcer of the custom, policy and practice acting through defendant Patino and defendants Vance, DelPizzo and Garnaas-Holmes), LiMandri and Vance and by Corporation Counsel, Michael A. Cardozo, the Mayor's and the City's Chief legal counsel (the "Custom", partially evidenced in Exhibit "1" hereto), to permit violations of zoning laws and regulations by those involved in commercial film or photography activities in the City, in particular at the properties owned by defendants Morgan and Cary and a neighbor, and, where a citizen exercises his First Amendment right to speak out against or to document said violations to petition for enforcement of the law and refuses to relinquish his First Amendment rights to do so when demanded by police, to effect false arrests of such citizens, in particular plaintiff, who has been so arrested five times pursuant to that Custom to deter and punish the exercise of his First Amendment rights and to prevent enforcement of the laws and public awareness of said violations and lack of enforcement, which Custom has, and has had, the full force of law; and

(b) based upon supplemental jurisdiction, for substantial compensatory and punitive damages under state law for the malicious, false arrests of plaintiff without probable or other cause on April 18, 2012 by defendant Patino, and on July 25, 2012 by defendants Patino and John Doe 1, as agents for and at the direction and with the knowledge, advice, inducement, approval and/or ratification of defendants Bloomberg, Harris, Kelly, Vance, DelPizzo, Garnaas-Holmes and defendants John Does 2-10 and Jane Does 1-10, for the malicious purpose and with the malicious intention of willfully and wantonly depriving plaintiff of his rights under the laws and Constitution of the State of New York and

inflicting upon plaintiff and causing him to suffer severe emotional distress and humiliation in reckless disregard of his interests and well-being with respect to the April 18, 2012, and July 25, 2012, false arrests and the outrageous, terrorist-like storming of plaintiff's apartment for approximately three hours on July 18, 2012, by defendant Patino and John Does 17-25 and Jane Does 17-25 as agents for and acting at the direction and with the knowledge, involvement, approval and/or ratification of defendants Bloomberg, Harris, Kelly, Vance, DelPizzo and Garnaas-Holmes and defendants John Does 2-10 and Jane Does 1-10, who had a duty to protect plaintiff from said conduct and violations of his rights.

2. The conduct of the City defendants, and each of them, alleged in paragraph 1 above was committed

(i) in conspiracy with and aided and abetted by defendants Daniel Brodsky, Thomas Brodsky, The Brodsky Organization, LLC, 433 West Associates, LLC, Urban Associates, LLC, Margaret Bergin O'Connor, Louis Zadrima and Joseph Pitre ("The Brodsky Defendants"), including through dealings by defendants O'Connor, Zadrima and Pitre, acting for and at the direction of the other Brodsky defendants and with their authority, authorization, approval and ratification, with defendant Patino as agent for the City defendants, including defendants Bloomberg, Harris, Kelly, Vance, DelPizzo, Garnaas-Holmes, Oliver, Battista, LiMardri and Cokkinos, and through the Brodsky defendants' rendering of substantial assistance, aid and encouragement to defendant Patino, acting on behalf of the other City defendants, with respect to the July 18, 2012 storming of plaintiff's apartment and the July 25, 2012 false arrest of plaintiff, both of which were carried out with the Brodsky defendants' substantial aid and assistance and with their

malicious, willful, wanton and outrageous disregard of plaintiff, his interests and his constitutional and other rights and with the intent to inflict upon and cause plaintiff to suffer, severe emotional stress, which plaintiff has suffered and continues to suffer, including as a result of the Brodsky defendants' malicious destruction of security tapes evidencing defendant's McKay's harassment of plaintiff by impersonating a police officer, to benefit defendants Morgan, Cary and McKay and to cause plaintiff severe emotional distress, and

(ii) in conspiracy with and with the urgings and inducements of defendants Morgan, Cary and McKay (including through direct dealings with defendants Patino and Garnaas-Holmes as agents for and with the knowledge, involvement, approval and ratification of the aforementioned City defendants, including Bloomberg, Harris, Kelly, Vance, DelPizzo, Garnaas-Holmes and defendants John Does 2-10 and Jane Does 1-10, aided and abetted by, and with the substantial assistance and encouragement of, defendants Schmulewitz and Belkin Burden, and in conspiracy with and at the urging, inducement and with the involvement, approval and/or ratification of John Does 11-16 and Jane Does 11-16, persons and entities engaged in film and/or photography activities in the City, either directly or in connection with their television, magazine, catalog and other businesses, which collectively induced and caused the City defendants, acting in conspiracy with said other defendants, including through defendant Patino as agent for the City defendants, to effect the false arrest of plaintiff on April 18, 2012, and through defendant Patino (and defendant John Doe 1) as their agent(s) to effect the false arrest of plaintiff on July 25, 2012; and acting through defendant Patino and John Does 19-25 and Jane Does 19-25 as agents of the other City defendants to storm plaintiff's apartment on

July 18, 2012, with the advice, urging, knowledge, approval and/or ratification of defendants Bloomberg, Harris, Kelly, Vance, DelPizzo and Garnaas-Holmes.

3. Defendants Bloomberg, Harris, Kelly, LiMardri, Oliver, Battista, Vance, DelPizzo, Garnaas-Holmes, Cokkinos, Patino, John Doe 1 (a detective in the Police Department), John Does 2-10 and Jane Does 1-10 (officials of the Bloomberg Administration employed by defendant the City) and John Does 17-25 and Jane Does 17-25 (employees of the City who stormed plaintiff's apartment with defendant Patino at the direction and with the knowledge, approval and/or ratification of defendants Bloomberg, Harris, Kelly, Vance, DelPizzo and Garnaas-Holmes and in conspiracy with, and with the aid and substantial assistance of the Brodsky defendants and the urgings, inducements and importuning of defendants Morgan and Cary), although acting within the course and scope of their employment and their official capacities, are all sued herein under Sections 1983 and 1985 in their individual and personal capacities and all acted, as alleged above, under color of state law, with the intent and for the purpose of depriving plaintiff of established rights secured under the First, Fourth and Fourteenth Amendments of the Constitution of the United States.

4. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343 (3) and (4) and 1367.

5. Venue in this judicial district is appropriate under 28 U.S.C. Sections 1391(b) in that all of the events that gave rise to the claims herein occurred in this district.

6. Defendant Elizabeth Morgan at all times alleged herein and material hereto has been an owner with her husband defendant Jonathan Cary of the residential property at 441 West 21st Street in the City, County and State of New York (the "Property" or the

"Residence") which is located one building from plaintiff's residence of twenty-one years and which, although zoned for exclusive residential use, was renovated to serve as, and has been extensively promoted, used and licensed by defendants Morgan and Cary as a commercial film and photography studio to the great disruption of the neighborhood, in violation of applicable zoning regulations, in addition to the Property's use as a part-time residence for defendants Morgan and Cary and their family.

7. Defendant Morgan all times alleged herein and material hereto acted both for herself and as an agent and in concert and conspiracy with defendant Jonathan Cary and at his direction and/or for his benefit and with his agreement, encouragement, inducement, substantial assistance, aid, abetment, approval, consent and ratification.

8. Defendant McKay at all times alleged herein and material hereto was an employee of defendants Morgan and Cary acting within the course and scope of his employment and/or a person acting at the direction of and in concert with said defendants, under their control, as their agent, for their benefit and with their inducement, agreement, approval, consent and ratification, including in supervising, coordinating and otherwise assisting with commercial film and photography shoots illegally conducted at their residence, and was deliberately retained by defendants Morgan and Cary even though unfit, including after his vicious stabbing of a cab driver in front of plaintiff's residence over a parking dispute prior to the events alleged herein.

9. Defendant Daniel Brodsky, on information and belief, is the controlling member of all of the Brodsky defendant companies; he and defendant Thomas Brodsky control and direct all of the Brodsky individual defendants regardless of the organization by which they are employed; and defendant The Brodsky Organization, LLC, holds itself out as the

alter-egos of defendants 433 West Associates, LLC (the owner of plaintiff's apartment building) and Urban Associates, LLC (the arm of The Brodsky Organization that manages its buildings under the control of defendants Daniel and Thomas Brodsky), which in turn hold themselves out to be part of The Brodsky Organization; and at all times alleged herein, each of the Brodsky defendants acted as members, agents and/or employees of The Brodsky Organization, LLC, 433 West Associates, LLC and Urban Associates, LLC and as agents of , under the control, and at the direction and with the approval of defendants Daniel Brodsky, Thomas Brodsky, O'Connor and Zadrima.

10. The block on which defendants Morgan's and Cary's residence (as well as plaintiff's residence) is located is zoned solely for residential use as reflected on the certificate of occupancy issued for the Property, and defendants Morgan's and Cary's use of their residence since at least 2009 for highly disruptive commercial film and photography shoots has been in violation of New York City laws, rules and/or regulations applicable to the zoning for, and permitted use of, the Property and the certificate of occupancy relating thereto.

11. Defendants Aaron Shmulewitz and Belkin Burden Wenig & Goldman, LLP ("Belkin Burden"), at all times material hereto have purported to be experts in real estate law, including zoning law, and notwithstanding--indeed because of--the illegality of Morgan's and Cary's extensive and highly promoted business use of their residence for commercial film and photography shoots known to and assisted by them, designed a common plan with and at the request and for the benefit of defendants Morgan and Cary to cover up violations, and to prevent enforcement of, the applicable zoning laws and regulations and substantially aided, abetted, encouraged and assisted defendants Morgan

and Cary in carrying out that plan which involved, among other things, threats by defendants Shmulewitz and Belkin Burden of criminal and disciplinary action for photographing public commerical activities that they lied were not taking place and did not involve film or photography shoots; repeated lies of said defendants to cover up those shoots and those illegal activities; and advising, aiding and abetting and directing Morgan's and Cary's urging, causing, inducing and conspiring with defendants Patino, Kelly, Bloomberg, Vance, DelPizzo, Garnaas-Holmes and John Does 2-10 and Jane Does 1-10, for whom defendant Patino acted as agent with their full authority, knowledge, approval and ratification, to effect false arrests and commence malicious prosecutions of plaintiff based upon false reports by Morgan and/or McKay and perjury of defendants Patino and Morgan known to or willfully, wantonly and intentionally disregarded by defendants Bloomberg, Harris, Kelly, Vance, DelPizzo and Garnass-Holmes, all of whom had a duty to plaintiff to prevent the violations of plaintiff's constitutional and other rights but directed, approved, authorized and encouraged defendant Patino as their agent to falsely arrest plaintiff on April 18, 2012 and on July 25, 2012 and to storm his apartment on July 18, 2012 with other City defendants for the purpose of effecting the warrantless, false arrest of plaintiff made on July 25, 2012, with their full authority as their agent and with their full knowledge of the illegality thereof in furtherance of the Custom and in conspiracy with defendants Morgan and Cary who urged, induced and caused such violations (with the substantial assistance and encouragement of defendants Shmulewitz and Belkin Burden in furtherance of their common plan) and in conspiracy with and the substantial assistance of the Brodsky defendants as to the July 18, 2012, and

July 25, 2012, violations of plaintiff's constitutional and other rights.

12. Defendants Shmulewitz and Belkin at all times material hereto acted in concert with and as the agents of defendants Morgan and Cary and aided, abetted and conspired with and otherwise provided substantial assistance and encouragement to defendants Morgan and Cary in pursuance of said common plan of defendants Shmulewitz' and Belkin's principal design to commit the criminal and other unlawful conduct alleged herein with the full knowledge of its illegality and with the intention of furthering same to harm plaintiff, including, without limitation, by means of knowingly false statements and unfounded, improper and unlawful threats of litigation and disciplinary proceedings and of abusive and malicious criminal prosecution, all for the improper purpose of deterring the exercise of plaintiff's First Amendment and other rights to document by photography public commercial activities and traffic, safety and other violations involving illegal commercial film and photography shoots at defendants Morgan's and Cary's Property, so as to prevent plaintiff from petitioning government agencies to address same.

13. Defendants Morgan, Cary and McKay, and, on information and belief defendants Shumulewiz and Belkin, Burden, Wenig & Goldman ("Belkin"), have known of plaintiff's opposition to and complaints to city officials concerning commercial activities at 441 since 2009, including with respect to a highly disruptive and illegal shoot in August, 2009 and another by Saturday Night Live ("SNL") at 441 on April 15, 2010, with blazing lights into the early morning hours and heavy equipment on the sidewalk without any permit whatsoever, as to which defendant Morgan claimed through defendant McKay, who approached plaintiff on the street the next day to tell me that NBC had lied "to us" about having a permit, which NBC later said was completely false and that

defendant Morgan or her representative had been informed of the lack of a permit and assured them that "the neighbors would not mind". (Plaintiff arranged for NBC to make a $2500 contribution to the block association to compensate for the disruption, further evidencing my "legitimate purpose", and Saturday Night Live apologized profusely for that disruption and, after viewing plaintiff's video, www. bit.ly/441video, informed plaintiff that it was shocking and that they would also be very upset if they lived on the block).

14. The complicity of the City, the Police Department and defendants Bloomberg, Cokkinos and Kelly in these violations was first apparent to plaintiff when he called the 10th precinct to see if there was a permit for the shoot on file for the SNL shoot and was told that there was, but when he asked to come to the precinct to see it, was told by the same person that, in fact, there really was no permit on file, namely that he had lied to plaintiff, which he did not dispute.

15. When plaintiff then asked that a patrol car go to 441 to ascertain if there was a permit, plaintiff was flatly told that the police department would never shut down a shoot even when there was no permit and the use of public property in violation of the law, without approval of the Mayor's Office, and the officer therefore refused to send out a patrol car and made no attempt to get a hold of anyone in the Mayor's Office. He then put plaintiff on "hold" for any eternity, and when he called him back, after identifying himself at the request of the operator, he was put on hold again only to be told, quite unbelievably, that the officer had left. When he called defendant Kelly's office that night to get action, nothing was done, and no one called him back the next day.

16. Similarly, complaints to the Mayor's office, as with a shoot in August, 2009, were

met with intentional misstatements and evasions designed to avoid enforcing the public property laws that had been violated by NBC and later by further misstatements and inaction which resulted in no punishment or fine whatsoever to NBC even though severe action had been promised by the Mayor's Office if what had been complained about was true, which the Mayor's Office acknowledged was the case as well as the serious nature of the violations. The Mayor's Office later engaged in extreme bad faith in failing to comply with and imposing conditions utterly inconsistent with FOIL and otherwise seeking to evade production of documents with respect to permits for shoots on plaintiff's block, including by blatant misrepresentations of its counsel and Deputy Commissioner, defendant Battista with the knowledge and approval and the direction of defendant Oliver.

**First Cause of Action**

16. Plaintiff realleges as if fully set forth herein each and every allegation in paragraphs 1-16, inclusive, above

17. As alleged above, all of the City defendants, acting under the color of state law, committed and conspired to commit, and all of the other defendants conspired with, aided and abetted or urged and induced the City defendants as state actors, to commit acts under color of state law on April 18, 2012, July 18, 2012 and July 25, 2012, with the intent and for the purpose of depriving plaintiff of established rights secured under the First, Fourth and Fourteenth Amendments of the Constitution of the United States and to intentionally and outrageously cause him severe emotional distress to deter and punish the exercise of his First Amendment rights, which severe injury to his rights and distress plaintiff did and

has suffered and continues to suffer.

**Second Cause of Action**

18. Plaintiff realleges as if fully set forth herein each and every allegation in paragraphs 1-17, inclusive, above.

19. As alleged above, all of the City defendants, acting under the color of state law, committed and conspired to commit, and all of the other defendants conspired with, aided and abetted or urged and induced the City defendants as state actors, to commit acts under color of state law on April 18, 2012, July 18, 2012 and July 25, 2012, with the intent and for the purpose of depriving plaintiff of established rights secured under the Constitution and laws of the State of New York and to outrageously and intentionally cause him severe emotional distress to deter and punish the exercise those rights, which severe injury to his rights and distress plaintiff did and has suffered and continues to suffer.

**Third Cause of Action**

20. Plaintiff realleges as if fully set forth herein each and every allegation in paragraphs 1-19, inclusive, above.

21. The Brodsky defendants, in conspiracy with defendants Morgan, Cary and McKay, intentionally destroyed, directed, approved and ratified the destruction by defendant Pitre, acting within the scope and course of his employment and as agent for said defendants, of a security tape/recording evidencing defendants Morgan's, Cary's and McKay's intentional infliction of emotional distress on plaintiff by directing and authorizing defendant McKay to impersonate a police officer and come to plaintiff's building owned by The Brodsky Organization and defendant 433 West Associates, LLC,

to intentionally cause him severe emotional distress by making plaintiff believe that he was about to be arrested, causing plaintiff extreme emotional distress, aided, abetted and exacerbated by the intentional destruction of security tapes evidencing that outrageous and illegal conduct and the adoption and ratification thereof by defendants Daniel Brodsky and Thomas Brodsky after its approval by defendants O'Connor and Zadrima.

22. All of defendants' conduct alleged in the complaint above was outrageous, malicious and in willful, wanton and reckless indifference and disregard of plaintiff and his rights and was conducted in extreme bad faith with the intention of causing plaintiff severe harm, severe emotional distress and humiliation as well as serious injury to and violations of his fundamental constitutional rights without any justification whatsoever, which it did, for the improper and unconstitutional purpose of retaliating for and deterring and punishing the exercise of plaintiff's constitutional rights and to prevent him from seeking redress for their violation and to deprive him of his liberty and due process, in violation of his rights under the First, Fourth and Fourteenth Amendments, including to due process, and by such illegal means to severely harm plaintiff to protect the illegal "franchise" conducted by defendants Morgan and Cary, entitling plaintiff, among other things, to substantial compensatory and punitive damages, namely compensatory damages in an amount not less than $10,000,000 and punitive damage in an amount not less than $20,000,000.

**WHEREFORE**, Plaintiff demands judgment against defendants, and each of them, in a sum not less than $10,000,000 for compensatory damages and in a sum not less than $20,000,000 for punitive damages for the intentional, wanton, willful, reckless and

malicious harm caused him, plus interest, costs, disbursements and such other and further relief as the Court may deem just and proper.

Dated: April 18, 2013

PLAINTIFF DEMAND A TRIAL BY JURY OF ALL CLAIMS AND ISSUES SO TRIABLE

*[signature]*
Gerard A. Corsini

*[signature]*
Gerard A. Corsini
Plaintiff *pro se*
433 W. 21st St., Apt 9A
New York, NY 10011
212-255-3232
gcorsini@gmail.com


**Buildings**

Robert D. LiMandri
Commissioner
rlimandri@buildings.nyc.gov

Timothy Hogan
Deputy Commissioner of
Enforcement
thogan@buildings.nyc.gov

280 Broadway
Seventh Floor
New York, NY 10007
www.nyc.gov/building

+1 212 442 7158 tel
+212 566 3865 fax

October 4, 2012

Gerard A. Corsini
433 West 21st Street
Apt 9A
New York, NY 10011

Re: 425 W. 21 Street, Manhattan

Dear Mr. Corsini,

I am writing this letter in response to your initial contact with my office regarding film shoots at the above referenced premises. In New York City, it is customary to have occasional/incidental commercial film/photography shoots inside residences. Occasional commercial film/photography shoots are allowed in residences as ancillary or incidental to the principal residence use. We have consulted with our General Counsel's Office, the Mayor's Office of Media and Entertainment, the Mayor's Office of Special Enforcement and the New York City Law Department regarding this matter.

If there is an issue on the block with illegal parking, blocked sidewalks or double parking, it should be addressed to the local police precinct as they are best suited to deal with congestion and access issues. Please contact 311 with any complaints regarding use or occupancy of the residence, and your complaints will be investigated.

Sincerely,

Timothy Hogan
Deputy Commissioner of Enforcement

Exhibit "I"