UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GERARD CORSINI,

        Plaintiff,

  -v-                                                    No. 13CV2587-LTS-MHD

DANIEL BRODSKY, et al.,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Gerard Corsini ("Plaintiff") filed his initial complaint in this action on April 18, 2013, against a large group of defendants including former New York City Mayor Michael Bloomberg, various state employees, and several private citizens. Plaintiff filed an amended complaint on February 11, 2014. This is Plaintiff's third lawsuit against substantially the same group of defendants, asserting substantially similar claims under 42 U.S.C. section 1983, arising from an alleged conspiracy to, <u>inter alia</u>, violate Plaintiff's First Amendment right to document and complain of his neighbor's alleged zoning violations. Plaintiff also asserts causes of action for violations of his Fourth and Fourteenth Amendment rights and state law, as well as for conspiracy and intentional infliction of emotional distress.

The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

Defendants former Mayor Michael R. Bloomberg, The City of New York, First Deputy Mayor Patricia E. Harris, former Police Commissioner Raymond W. Kelly, Commissioner Katherine L. Oliver, Commissioner Robert Limandri, Deputy Commissioner John

Battista, Deputy Inspector Elisa A. Cokkinos, Lieutenant Houlihan, Detective Eric Patino, Officer Richard Stellman, The Police Department of the City of New York, and Lieutenant Edward Loss of the New York City Fire Department (collectively, the "City Defendants") have moved pursuant to Federal Rules of Civil Procedure 12(c) for judgment on the pleadings.

The Court has reviewed the submissions of the parties carefully.[1] For the following reasons, the City Defendants' motion for judgment on the pleadings is granted in its entirety, and Plaintiff's claims against the City Defendants are dismissed.

BACKGROUND

Plaintiff alleges that each of the City Defendants is a participant in a conspiracy involving civilians, junior and senior members of the police department, lawyers, and even the then-mayor of New York City, to prevent Plaintiff from exposing his neighbors' alleged zoning violations. According to Plaintiff, this conspiracy has been carried out through, inter alia, several false arrests and malicious prosecutions of Plaintiff. The Court assumes the parties' familiarity with the prior litigation and general background of the lawsuits, which is summarized in Corsini v. Morgan, et al., 2013 N.Y. Misc. LEXIS 2662 (N.Y. Sup. Ct. June 20, 2013), and Corsini v. Bloomberg, 26 F. Supp. 3d 230 (S.D.N.Y. 2014), aff'd in part, appeal dismissed in part sub nom. Corsini v. Conde Nast, ___ Fed. Appx. ___ (2d Cir. May 12, 2015). In an order filed on September 23, 2014, the Court dismissed this case against several of the other named defendants, see Corsini v. Brodsky, et al., No. 13CV2587, 2014 WL 5049753 (S.D.N.Y. Sept. 23, 2014).

The following allegations are drawn from Plaintiff's Amended Complaint.

---

[1] Consistent with its undertaking in its November 18, 2014, Order (docket entry no. 119), the Court has taken judicial notice of the affidavit referred to therein.

Plaintiff lives across the street from Defendants Elizabeth Morgan ("Morgan") and Jonathan Cary ("Cary"), and has been complaining about alleged zoning violations at the Morgan/Cary residence since at least 2009.  Plaintiff alleges that the conspiracy began in November of 2010, with the objective of "tak[ing] all steps necessary to have plaintiff falsely arrested and evicted from his apartment."  (Am. Compl., docket entry no. 22, at 3.)  Plaintiff alleges in this and his previous lawsuits that Morgan and other individuals associated with her have lied to Plaintiff, the courts, and civic authorities about their own activities and Plaintiff's activities.  Morgan has obtained two orders of protection against Plaintiff.  Plaintiff alleges that he first discovered the "complicity" of New York City and several of its agents after a "Saturday Night Live" film shoot at the Morgan/Cary residence on April 15, 2010, when the police failed to respond sufficiently to his requests that they inquire as to whether a permit had been obtained.  (Am. Compl. at 26-28.)

Plaintiff alleges that he was arrested on April 18, 2012, in response to an allegedly false complaint made by Morgan, against Plaintiff, accusing Plaintiff of violating an order of protection.

Plaintiff further alleges that he was subjected to a three hour "siege" of his apartment, in aid of the conspiracy, on July 18, 2012, involving both the New York City Police Department and the New York Fire Department, during which several Defendants allegedly "attempt[ed] to cause plaintiff severe emotional stress and to put him at risk of a heart attack to have a pretext to break into his apartment to arrest him."  (Am. Compl. at 3.)  Specifically, Plaintiff alleges that Defendants Patino and Loss, as well as "numerous EMC and fire personnel," stood outside Plaintiff's apartment door, knocking repeatedly on his door and ringing his buzzer.  (Am. Compl. at 3.)  During this time, Defendant Pitre (who is not one of the

City Defendants) "put a key to plaintiff's apartment in the lock on his door and turn[ed] it, thereby entering/breaching plaintiff's apartment."  (Am. Compl. at 4.)  Plaintiff further alleges that Defendant Pitre (who appears to have been a representative of Plaintiff's landlord[2]) was acting "in concert with the City defendants," when he inserted the key into Plaintiff's lock.  (Am. Compl. at 12.)

Plaintiff also alleges that he was arrested on July 25, 2012, in response to "false report[s]" from Morgan, as part of the conspiracy to deprive Plaintiff of his constitutional rights.  (Am. Compl. at 4.)  Plaintiff alleges that these arrests resulted in prosecutions "terminat[ing] in [his] favor, as to the [April 18, 2012 arrest's] prosecution . . . to one count in the complaint . . . [and] as to the [July 25, 2012 arrest's] prosecution . . . as to all counts in the complaint."  (Am. Compl. at 6.)

Plaintiff alleges that, while he was in police custody on July 25, 2012, Defendants deliberately withheld "necessary medical care."  (Am. Compl. at 30.)  Defendants' actions allegedly "result[ed] in [Plaintiff's] delayed hospitalization and the increased risk of a heart attack and undue and life-threatening emotional stress."  (Am. Compl. at 14.)  When Plaintiff initially requested medical attention, "Defendant Patino was casually talking on his phone and otherwise seemingly unoccupied," according to Plaintiff.  (Am. Compl. at 13-14.)

Plaintiff's Amended Complaint asserts three causes of action.  First, pursuant to 42 U.S.C. sections 1983 and 1985, Plaintiff brings a claim for "the deprivation of . . . rights, privileges, or immunities secured by the Constitution," by a state actor.  Specifically, Plaintiff alleges that the City Defendants and others have violated his constitutional rights through "false

---

[2]   (See Am. Compl. at 3.)

arrests, malicious prosecutions and the storming and breaching of his apartment in retaliation for the exercise of his First Amendment rights." (Am. Compl. at 30.) Plaintiff also alleges a "violation of his First, Fourth and Fourteenth Amendment rights as a result of the deliberate withholding of necessary medical care during his custody, [and] the deliberate disregard of the serious medical risks to plaintiff knowingly caused by the storming and breaching of his apartment." (Am. Compl. at 30.)

Plaintiff's second cause of action is presumably also asserted pursuant to 42 U.S.C. sections 1983 and 1985. Plaintiff alleges that the City Defendants conspired with the various other defendants "to effect plaintiff's false arrests, malicious prosecutions, the storming and breaching of his apartment, the surveillance and stalking of him and the deliberate denial of necessary medical care after creating the conditions and risks requiring same." (Am. Compl. at 31.)

Plaintiff's third and final cause of action appears to assert state law claims for infliction of emotional distress, as well as a First Amendment retaliation claim.

## DISCUSSION

When deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standards used for determination of a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Cortes v. City of New York, 700 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2010). Under this standard, a court must assess whether a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). A court is not, however, required to accept "conclusory statements" made by the plaintiff as true, nor do "legal conclusion[s] couched as

factual allegation[s]" merit such deference.  Twombly, 550 U.S. at 555.  Specifically, conclusory allegations of a conspiracy to deprive a plaintiff of his constitutional rights are not sufficient to state a claim upon which relief may be granted.  X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999) (citing Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999)).

In resolving the motion, the Court may consider the complaint itself, documents attached to or referenced within the complaint, and matters of which judicial notice may be taken.  See, e.g., Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  Judicial notice of matters asserted in pleadings or publications is taken "not for the truth of the matter asserted," but rather to establish that the matter has in fact been asserted.  Global Network Commc'ns Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).  For instance, a court may take judicial notice that assertions were made "in the press . . . [or] in lawsuits and regulatory filings."  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

Fourth and Fourteenth Amendment Claims - False Arrest and Malicious Prosecution

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law."  Jocks v. Taverneir, 316 F.3d 128, 134 (2d Cir. 2003) (citation omitted).  "To prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Jocks, 316 F.3d at 134-35 (internal quotation marks and citation omitted).  The existence of probable cause for an arrest – i.e., that the arrest was privileged – is a defense to a claim for false arrest or malicious prosecution.  Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  Further, in this Circuit, in "cases

involving arrests for violating a protective order, courts . . . have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." Carthew v. Cnty. of Suffolk, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (citing Dudley v. Torres, No. 05 Civ. 1729, 3008 WL 2149603, at *5 (E.D.N.Y. May 21, 2008)).

Plaintiff alleges that he was arrested on both April 18, 2012, and July 25, 2012, in response to complaints made by Morgan that Plaintiff had violated outstanding orders of protection, though he alleges that her complaints were "false." Because the Complaint proffers no further details about the arrests nor alleges any facts indicating that the police had reason to know that Morgan's claims were false or that they had otherwise conspired with her, the claim fails to state "a claim to relief that is plausible on its face," as required by Twombly and Iqbal. As this Court noted in Corsini's prior related suit against Morgan and the City Defendants, "Plaintiff has been making complaints about the activities at the Morgan/Cary premises since at least 2009," and Morgan has likewise been complaining to the police about Plaintiff's interference with her life, at times asserting that she feared for the safety of her children and family. Corsini, 26 F. Supp. 3d at 236. Morgan has obtained multiple protective orders against Plaintiff. (E.g., Am. Compl. at 30.)

Plaintiff's false arrest and malicious prosecution claims rest principally on his contentions that Morgan lied about his conduct, that the conduct of which she accused him was not specifically prohibited by the relevant order(s) of protection, and/or that there was some defect in the relevant order(s) of protection. "It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal citations and quotation

marks omitted). The Amended Complaint proffers no specific facts to support Plaintiff's contention that the arresting officers should have known at the time of the arrests that Morgan's complaints were false and should for that reason have refused to act upon them. Rather, he reiterates his generalized and conclusory assertions of falsehoods and conspiracies, and argues that his subsequent trial – at which he was convicted of attempting to violate an order of protection – demonstrates that he is a victim of falsehoods and conspiracies and that the judge who presided over that proceeding was corrupt and biased. Plaintiff's oft-repeated but conclusory assertions are insufficient to plead plausibly the requisite lack of privilege for his arrests. To the contrary, insofar as he alleges that the arrests were predicated on Morgan's accusations of protective order violations, the Amended Complaint provides the basis for a proper inference of probable cause.

Similarly, to prevail on a claim for malicious prosecution, a plaintiff "must plead facts sufficient to establish lack of probable cause." Landon v. Cnty. of Orange, 08 Civ. 0848, 2009 WL 2191335, at *8 (S.D.N.Y. July 23, 2009). Mere conclusory allegations that Morgan's complaints were false are insufficient to establish lack of probable cause. Accordingly, Plaintiff's claims of malicious prosecution must be dismissed.

Moreover, when a conviction results from the arrest in question, a claim for lack of probable cause under section 1983 automatically fails. Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986). Thus, Plaintiff's claims for false arrest and malicious prosecution with respect to the April 18, 2012, arrest also fail because Plaintiff was convicted of one of the charges upon which he was arrested. The dismissal of the July 25, 2012, protective order violation charge shortly after the arrest does not vitiate the existence of probable cause for the arrest, since Plaintiff acknowledges that he was arrested based on the complaint of the alleged

victim. Nor does it render plausible the malicious prosecution claim in connection with that arrest, as City Defendants' conduct in connection with those charges appears to have consisted only of the arrest and filing of a complaint based on Morgan's allegations.

Plaintiff alleges in a conclusory fashion that the orders of protection are invalid and therefore may not serve as the basis for his arrests on April 18, 2012, and July 25, 2012. In his opposition, Plaintiff asserts that the protective order entered against him on January 10, 2012, did not contain a "check mark" in the "stay away" portion, which would command that he not go near Morgan's home. This allegation is inconsistent with the documentary evidence in the record, as incorporated into Plaintiff's Amended Complaint by reference, which shows that both the January 10, 2012, and April 18, 2012, orders contain "stay away" provisions. (See Passeser Decl. Exs. 4 and 5, docket entry nos. 81-4 and 81-5.) Plaintiff further asserts that photography of the protected parties was not covered by the April 18, 2012, order, yet the record demonstrates that the April 18, 2012, order provides that Plaintiff's conduct is to be limited by conditions including: "no photographing or recording of protected party's home . . . [and] no contact of any kind whatsoever." (Id. at 81-4.) Therefore, Plaintiff's allegation that Morgan had complained that he had violated the order by failing to "stay away" and to avoid contact provide, in the absence of any factual allegations that the City Defendants had reason to know that Morgan had lied, sufficient basis for a finding of probable cause to bar his claim for false arrest and malicious prosecution.

Fourth Amendment Claim - Unreasonable Search and Seizure

Plaintiff alleges that his Fourth Amendment rights to freedom from unreasonable seizure and search were violated by the July 18, 2012, "siege" of his apartment. This claim fails because he has pleaded neither a seizure nor a search.

Plaintiff argues that he was confined illegally when the police and fire department representatives were banging on his apartment door and ringing his buzzer in an attempt to get him to emerge so that they could arrest him. If, as Plaintiff alleges, the effort was to draw him out of the apartment into public space, he clearly was not being confined in the apartment and his claim of illegal seizure fails for lack of plausible factual support.

His claim of illegal search is premised on the insertion by the landlord's representative of a key into the lock of his apartment in the course of the "siege." This claim, while more creative, is also unavailing.

"[A]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). A claim for unreasonable search arises from a government interference with one's reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). Where there is no reasonable expectation of privacy, there cannot be an unlawful search. Id.

The Second Circuit has been silent with respect to the reasonableness of a plaintiff's expectation of privacy in his exterior keyhole, and other circuits are split. Courts in the First, Fourth, and Sixth Circuits have determined that there is no reasonable expectation of privacy in a lock, and that "the insertion and turning of a key therein does not constitute a search." E.g., United States v. Daniels, 323 Fed. Appx. 201, 208 (4th Cir. 2009). While the Court of Appeals for the Seventh Circuit has held that there is a reasonable expectation of privacy in a keyhole, it has concluded that the insertion of a suspect's key into a lock, to verify that an apartment labeled as his was in fact his, was so de minimis an invasion of his privacy interest in the keyhole that no probable cause was required. United States v. Concepcion, 942

F.2d 1170, 1172 (7th Cir. 1991).  Furthermore, under New York law, tampering with a lock without entering the premises is not an unlawful entry.  See People v. Sanchez, 209 A.D. 2d 265, 266 (1st Dep't App. Div. N.Y. 1994).  Here, the key was inserted by a private individual, rather than one acting under color of law, so the basic state action predicate for a Fourth Amendment violation is lacking.  Even if the Court credits for this purpose Plaintiff's conclusory allegations that the insertion of the key was in furtherance of a conspiracy, the action is insufficient to establish an illegal search.  There is no allegation that City Defendants were seeking, or obtained, any information through this action.  Furthermore, the Court finds persuasive the Seventh Circuit's reasoning that the mere insertion of a key, under circumstances in which law enforcement is already in legitimate possession of the instrument, is too de minimis an invasion of any privacy interest in the lock to require probable cause.

Therefore, as to his Fourth Amendment unlawful search and seizure claim, Plaintiff has not stated a cause of action for which relief can be granted.

Fourteenth Amendment Claim - Withholding Necessary Medical Care

Plaintiff asserts that City Defendants violated his constitutional rights by withholding necessary medical care while Plaintiff was detained after the July 25, 2012, arrest.

When a prisoner is detained but not yet convicted, his rights are protected by the Due Process Clause of the Fourteenth Amendment and are "at least as great as those of a convicted prisoner."  Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).  In analyzing a plaintiff's claims of deliberate withholding of necessary medical care, the Second Circuit applies the Eighth Amendment standard of deliberate indifference to determine whether the arrestee's Fourteenth Amendment rights have been violated.  E.g., id. (holding that the official custodian will be liable for violating a detainee's due process rights if he meets the standards for violating

a convicted prisoner's Eighth Amendment rights).  Under the Eighth Amendment, a convicted prisoner's right to be free from cruel and unusual punishment has been interpreted to prohibit the deprivation of necessary medical care in circumstances constituting deliberate indifference. Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

An Eighth Amendment claim for inadequate medical care has two essential elements.  The first, the objective requirement, considers the seriousness of the medical need. Specifically, this requirement considers whether "the prisoner was actually deprived of adequate medical care" and whether "the inadequacy of the medical care [was] sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal citation and quotation marks omitted).  The Second Circuit has noted as relevant in this regard the questions of whether "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain;" "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" "the presence of a medical condition that significantly affects an individual's daily activities;" and "the existence of chronic and substantial pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted).

Here, Plaintiff alleges that he was at risk of a heart attack due to stress.  Courts in this District have previously declined to find this risk-exposure type of injury sufficient for the purposes of an Eighth Amendment claim.  For instance, in McCoy v. Goord, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003), the court determined that failure to provide treatment for a complaint of chest pain is not sufficient to give rise to a claim under the Eighth Amendment, and only might raise a claim of mere negligence.  Id.; see also Soto v. Wright, No. 11CV2289, 2013 WL 474291 at *6 (S.D.N.Y. Feb. 1, 2013) (holding that delayed treatment for chest pains, which

resulted in no injury to plaintiff, does not meet the requisite standard for injury under the Eighth Amendment). Here, Plaintiff does not even assert that he was suffering from chest pains. Rather, he asserts only that his "emotional distress" could have induced a heart attack. These claims are insufficient as a matter of law to state a cause of action for inadequate medical treatment under the Fourteenth Amendment.

Assuming, arguendo, that the Plaintiff had stated an objective medical need sufficient for an Eighth Amendment claim, the claim would fail for the independent reason that it does not meet the second requirement of a claim for withholding necessary medical care, which "ensures that the defendant prison official acted with a sufficiently culpable state of mind." See Smith, 316 F.3d at 183-84. This subjective requirement demands that "the official [is both] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw[s] the inference." Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (internal quotations omitted).

Plaintiff's Amended Complaint fails to assert facts that demonstrate deliberate indifference on the part of Officer Patino, or any other City Defendant. His mere assertions that Officer Patino remained on his cell phone despite Plaintiff's request for medical treatment, and that the City Defendants "had every reason to expect" Plaintiff's possible heart attack, are insufficient factually to support plausibly the necessary inference that Officer Patino knew that Plaintiff faced a substantial risk of serious harm. Plaintiff's claim for withholding necessary medical care thus fails.

First Amendment Retaliation Claim

Plaintiff further alleges that the City Defendants violated his First Amendment rights as a result of the false arrests and malicious prosecution.

To prevail on a First Amendment retaliation claim, a plaintiff who claims that public officials retaliated against him for speech made as an ordinary citizen must prove that: (1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of the plaintiff's First Amendment rights. Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Where the retaliatory action complained of is an arrest and probable cause existed at the time of plaintiff's arrest, however, no inquiry into the "officer's underlying motive is required." Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995). Given that Plaintiff's own pleading demonstrates that there was probable cause for the arrests on April 18 and July 25, 2012, Plaintiff cannot state a claim for retaliation based on those arrests.

In Plaintiff's opposition papers, he has proffered that his rights to walk in his neighborhood and photograph unlawful conduct were chilled due to orders of protection obtained against him. Plaintiff has failed, however, to plead allegations of chilling in his Amended Complaint, and failed to comply with the Court's Individual Practices Rule A.2.b.(iii), which requires the non-moving party to state his intention to amend his complaint within seven days of the filing of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or be held to the challenged pleading. Plaintiff chose to oppose the motion rather than proffer an amendment. Therefore he is not entitled to a further opportunity to amend in light of the arguments raised in Defendants' motion. See Individual Practices Rule A.2.b.(iii).

Plaintiff's claim for First Amendment retaliation, therefore, fails for lack of factual allegations indicative of action without probable cause, and for lack of facts demonstrating that Plaintiff's exercise of his First Amendment rights was chilled.

Conspiracy to Deprive Plaintiff of Constitutional Rights

As previously noted, Plaintiff alleges that each of the City Defendants participated in a widespread conspiracy to violate his constitutional rights. "To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Further, "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983). Likewise, diffuse allegations "are insufficient, unless amplified by specific instances of misconduct." Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).

Plaintiff has failed to allege any specific, non-conclusory facts indicative of an agreement involving City Defendants and the other Defendants to act in concert to inhibit Plaintiff's First, Fourth, and Fourteenth Amendment rights. Instead, he has merely proffered conclusory allegations regarding the conspiracy's existence and relies on his conclusory allegations of falsehoods, illegitimate conduct, and illegitimate motivations to support his inferences of concerted action. For instance, Plaintiff alleges that Defendant Patino's false arrests of Plaintiff on April 18, 2012 and July 25, 2012, occurred "with the aid and in conspiracy with the City defendants," without explaining what facts he relied on to draw this conclusion. (Am. Compl. at 2.) Similarly, Plaintiff alleges that Morgan, "in concert with the City defendants," acted with the purpose of "find[ing] pretexts to falsely arrest [P]laintiff to deter the exercise of his First Amendment rights." (Am. Compl. at 12.) These conclusory allegations are insufficient to state a claim plausibly. Therefore, the conspiracy claim must be dismissed.

Claim against New York Police Department

Claims against the New York Police Department ("NYPD") are barred because the NYPD may not be sued. It is well established that "Section 396 of the New York City Charter requires 'all actions and proceedings for the recovery of penalties . . . be brought in the name of the City of New York, and not that of any agency, except where otherwise provided by law.'" Rossi v. New York City Police Dep't, No. 94CV5113, 1998 WL 65999 at *5 (S.D.N.Y. Feb. 17, 1998); see also East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992).

Monell Claim against New York City

To hold a municipality liable pursuant to section 1983, plaintiff must demonstrate that a policy or custom of the municipality caused the deprivation of his federal or constitutional rights. Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978). To demonstrate such a policy or custom, a plaintiff must show both "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries" and "a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987). Because Plaintiff must establish a deprivation of his constitutional rights, his Monell claim is tied to his claim against the other City Defendants. Plaintiff has failed to state a claim for a violation of his constitutional rights and, therefore, his Monell claim against New York City also must be dismissed.

CONCLUSION

For the foregoing reasons, the Defendants' motion for judgment on the pleadings is granted, and Plaintiff's claims against the City Defendants are dismissed with prejudice.

This order resolves docket entry number 80.

This case remains referred to Magistrate Judge Dolinger for general pre-trial management.

SO ORDERED.

Dated: New York, New York
      May 27, 2015

                                        /s/ Laura Taylor Swain
                                       LAURA TAYLOR SWAIN
                                       United States District Judge